County Superior Court that was later removed to this Court and assigned Civil Action No. 96-10804-DPW ("1996 Action").

74.   Black & Decker is informed and believes, and therefore avers, that Liberty Mutual unlawfully used the information that it received pursuant to the Forbearance Provision as a basis for filing the 1996 Action.

75.   The original complaint in the 1996 Action, which was not served on Black & Decker, made allegations concerning both Environmental Claims and Long-Term Exposure Claims. After Liberty Mutual filed its original complaint, it amended that complaint to delete the allegation that it was not obligated to defend the pending Long-Term Exposure Claims, all without serving the original complaint upon Black & Decker. Black & Decker is informed and believes, and therefore avers, that the amended complaint contained no allegations concerning the Long-Term Exposure Claims because Liberty Mutual knew, and had known since at least as early as its receipt of notice of the Arkansas Hearing Loss and Mississippi Hearing Loss Claims, that it had no reasonable basis, in view of the facts and law and the provisions of the applicable Policies, to require Black & Decker to pay any portion of the defense of those claims.

76.   Liberty Mutual actively concealed the existence of this action from Black & Decker. It did not serve the amended complaint until April 1, 1996, the last business day for service, pursuant to Mass. R. Civ. P. 4(j).

77.   Liberty Mutual made no settlement proposal to Black & Decker. It did not even seek to meet with Black & Decker to discuss settlement until the eve of the expiration of the deadline for serving its complaint. It did not even disclose the fact that it had filed suit until the eve of the expiration of the deadline for serving its complaint.

78.   Prior to filing its complaint in the 1996 Action, Liberty Mutual took no steps to confer with Black & Decker concerning whether there remained a justiciable case or controversy regarding the duty of Liberty Mutual to indemnify or defend Black & Decker with respect to the claims that Liberty Mutual put at issue in its complaints in the 1996 Action. As a result, Liberty Mutual sought a declaratory judgment as to the following Environmental Claims as to which there was no justiciable case or controversy at the time: Boarhead, New Bedford Contribution, POP Fastener, Mallory Capacitor, PAS Holbrook, PAS Lyboult, PAS Volney, PAS Powerline, PAS Irwin, Silent Hoist and Jadco-Hughes.

79.   In its complaint in the 1996 Action, Liberty Mutual asserted that it had no duty to indemnify or defend Black & Decker with respect to certain claims as to which it had previously agreed to indemnify or defend Black & Decker, including the Medway and PAS Oswego claims.

80.   In its complaint in the 1996 Action, Liberty Mutual asserted that it had no duty to indemnify and defend Black & Decker with respect to certain sites although it knew of no specific bases under the Policies for refusing to indemnify and defend Black & Decker. When required, by Court Order, to state its bases for refusing to indemnify and defend with respect to each of the claims that were the subject of its complaint, Liberty Mutual was unable to identify any bases for refusing to indemnify and defend with respect to the WW Cross, Bostik, Whitman, JC Rhodes, New Bedford Harbor, PAS Fulton, PAS Rice Road, PAS Volney, Douglassville and Bostik Torrance sites. Instead, although Liberty Mutual had placed those claims in issue, Liberty Mutual stated that it "has determined that there is a dispute as to the existence of coverage ... with respect to the ... Site" and that Liberty Mutual "believes that it has no obligation under the .... Policies to defend or indemnify [Black & Decker] with respect to the [Site]."

21

81. Liberty Mutual's conduct in imposing the Forbearance Provision upon Black & Decker, its conduct in connection with the Forbearance Provision and its conduct in connection with the 1996 Action was and is contrary to Liberty Mutual's duties promptly to comply with its obligations as an insurer to investigate, evaluate, negotiate and settle individual claims and provide defense and/or indemnification as required by the Policies. Liberty Mutual's conduct in commencing the 1996 Action was in derogation of the Forbearance Provision and constitutes misuse of the Forbearance Provision and misuse of the information provided by Black & Decker.

82. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual acted in bad faith in imposing the Forbearance Provision upon Black & Decker, and in purporting to proceed under it, and, further, that it entered into the 1995 Agreement intending not to perform its obligations to negotiate in good faith and intending to seek and utilize information provided by Black & Decker for purposes other than making a good faith offer to settle the Unresolved Claims.

83. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual in connection with the handling of the Unresolved Claims that were the subject of the 1996 Action was in breach of the obligations of Liberty Mutual properly to investigate and evaluate claims and to respond to communications with its insureds.

    l.  The Conduct Of Liberty Mutual Regarding Long-Term Exposure Claims During The 1996 Action

84. After receiving the September 1995 Letter, Liberty Mutual was aware that Black & Decker sought a defense, and, if necessary, indemnification, from Liberty Mutual in connection with the Maritime Asbestos Long-Term Exposure Claim. By that time, Liberty Mutual also knew that it was obligated, under the Policies, to defend Black & Decker with respect to that claim.

85.  By at least as early as February 1996, a time by which Liberty Mutual had commenced the 1996 Action and concealed the existence of that action from Black & Decker, Liberty Mutual was aware that Black & Decker was seeking that Liberty Mutual defend and, if necessary indemnify, it in connection with the Maritime Hearing Loss, Abarca Bostik and Pennsylvania Benzene Long-Term Exposure Claims and that Liberty Mutual was obligated, under the Policies, to defend Black & Decker with respect to those claims.

86.  In December 1996 and February 1997, Black & Decker provided Liberty Mutual notice of the Alwell Asbestos Long-Term Exposure Claim. Liberty Mutual ignored the notice, and the Court permitted Black & Decker to supplement its counterclaim in the 1996 Action to allege that Liberty Mutual was in breach of its duty to defend, and, if necessary, indemnify, Black & Decker with respect to the Alwell Asbestos Long-Term Exposure Claim.

87.  Black & Decker is informed and believes, and therefore avers, that Liberty Mutual knew that it was obligated to defend, and, if necessary, indemnify, Black & Decker with respect to the Alwell Asbestos Long-Term Exposure Claim.

88.  During the course of discovery in the 1996 Action, Liberty Mutual did not advise Black & Decker that it recognized its duty to defend, and, if necessary, indemnify, Black & Decker with respect to the eight Long-Term Exposure Claims that were at issue in the 1996 Action. As a result of that conduct, Black & Decker was forced to file a summary judgment motion to establish that Liberty Mutual was obligated to discharge its agreement to defend, and, if necessary, indemnify, Black & Decker with respect to those claims.

89.  In response to the Black & Decker summary judgment filings, in early 1998, Liberty Mutual belatedly acknowledged that it had a duty to pay the defense costs of Black & Decker with respect to the Long-Term Exposure Claims that were at issue in the 1996 Action.

23

90. Liberty Mutual asserted that it was obligated to pay only a percentage of the defense costs of the Arkansas Hearing Loss, Mississippi Hearing Loss and Mississippi Hand/Arm Vibration Long-Term Exposure Claims ("Three Long-Term Exposure Claims") due to purported cost-sharing agreements. Black & Decker is informed and believes, and therefore avers, that said assertion was contrary to the facts and the law.

91. Liberty Mutual made no claim that its obligation to defend Black & Decker in connection with the Abarca Bostik, Alwell Asbestos, Maritime Asbestos, Maritime Hearing Loss and Pennsylvania Benzene Long-Term Exposure Claims ("Five Long-Term Exposure Claims") was limited by any purported cost sharing agreement.

92. In discovery in the 1996 Action, and in its summary judgment filings in 1998 in that action, Black & Decker provided copies of invoices and other records showing defense costs incurred in connection with the Long-Term Exposure Claims to Liberty Mutual.

93. Black & Decker compiled and summarized its defense costs in connection with the Five Long-Term Exposure Claims and forwarded this information to Liberty Mutual in October 1999 and February 2000. Black & Decker provided supplemental information to Liberty Mutual since then concerning further defense costs that it has incurred in connection with those claims.

94. Black & Decker had provided certain invoices in connection with the Three Long-Term Exposure Claims to Liberty Mutual prior to the commencement of the 1996 Action. It also had produced additional invoices to Liberty Mutual in January 1998 in connection with discovery in the 1996 Action. On October 12, 2000, Black & Decker compiled again, and produced to Liberty Mutual in bound notebooks, and with detailed schedules, all the invoices in connection with the Three Long-Term Exposure Claims, that it was able to locate.

95. As of January 30, 2002, Liberty Mutual had not paid any of the defense costs in connection with the Five Long-Term Exposure Claims, despite its acknowledgment and admission, in filings in the 1996 Action and elsewhere, that it was obligated to pay such costs.

96. As of January 30, 2002, Liberty Mutual had not paid any portion of many of the invoices in connection with the Three Long-Term Exposure Claims, despite its acknowledgment and admission, in filings in the 1996 Action and elsewhere, that it was obligated to pay a percentage of such costs.

97. On January 30, 2002, Black & Decker moved to supplement its counterclaim in the 1996 Action to add allegations that the conduct of Liberty Mutual in failing to defend Black & Decker in connection with the Five Long-Term Exposure Claims, notwithstanding the Liberty Mutual representation to the Court that it would defend Black & Decker with respect to those claims, was in breach of contract and in violation of Mass. Gen. Laws c. 93A ("Motion to Supplement").

98. On January 30, 2002, Black & Decker also moved to terminate the stay on discovery in connection with the Black & Decker claim, in the 1996 Action, that Liberty Mutual had acted in violation of Mass. Gen. Laws c. 93A and failed to act in good faith ("Chapter 93A Motion").

99. The Liberty Mutual responses to the Motion to Supplement and Chapter 93A Motion were due on February 13, 2002. Liberty Mutual responded to those motions by alleging that it had paid the defense costs in connection with the Five Long-Term Exposure Claims and its purported share of the defense costs in connection with the Three Long-Term Exposure Claims. Those payments were made by checks dated February 12, 2002 that Black & Decker did not receive until after Liberty Mutual filed its oppositions to the motions ("February 2002

Payments"). Liberty Mutual did not inform Black & Decker that it intended to make, or had made, the February 2002 Payments until Liberty Mutual filed its response to the two motions.

100. The February 2002 Payments were in the approximate amount of the then-outstanding principal amount owed with respect to the Five Long-Term Exposure Claims, but were considerably less than the then-outstanding principal amount owed with respect to the Three Long-Term Exposure Claims. Liberty Mutual has never explained, despite requests in discovery, the manner in which it calculated the amounts of the February 2002 Payments with respect to the Three Long-Term Exposure Claims.

101. The February 2002 Payments did not include interest, although unpaid invoices were issued as early as 1991.

102. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual used the pendency of the 1996 Action as a further pretext to avoid paying obligations that it did not contest. Said obligations include, but are not limited to, the obligation to pay defense costs for the Long-Term Exposure Claims that Liberty Mutual did not pay until following the filing of the Motion to Supplement and the Chapter 93A Motion.

103. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual would not have made the February 2002 Payments with respect to the Long-Term Exposure Claims if Black & Decker had not filed the Motion to Supplement and the Chapter 93A Motion.

104. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual in not making payment with respect to the Long-Term Exposure Claims until after Black & Decker filed the Motion to Supplement and the Chapter 93A Motion was undertaken as part of a plan to coerce Black & Decker into accepting less than the amounts to which it is entitled, and to pay even those reduced sums in a dilatory and untimely manner.

Black & Decker is informed and believes, and therefore avers, that said plan includes failing to act promptly upon communications concerning these defense costs, failing promptly to provide a reasonable explanation of its failure to pay these defense costs and seeking to impose unilateral and arbitrary reductions in the amounts to be paid to Black & Decker.

    J.   The Refusal Of Liberty Mutual To Honor Its Agreements To Indemnify And Defend Black & Decker With Respect To Environmental Claims

  105. During the course of the 1996 Action, Liberty Mutual continued repudiating its agreement to indemnify and defend Black & Decker with respect to the Medway and PAS Oswego claims. As a result of that conduct, Black & Decker was forced to file a summary judgment motion to establish that Liberty Mutual was obligated to discharge its agreement to indemnify and defend Black & Decker with respect to those claims.

  106. Rather than honoring its obligation and agreement to indemnify and defend Black & Decker with respect to the Medway and PAS Oswego claims, Liberty Mutual filed a summary judgment motion in which it asserted that it had no obligation to indemnify and defend Black & Decker with respect to the Medway claim and that the Black & Decker claim with respect to the PAS Oswego claim should be dismissed. Liberty Mutual also asserted that the Black & Decker claim with respect to the PAS Fulton site should be dismissed because "Liberty Mutual agreed to defend and indemnify" Black & Decker with respect to that claim. This statement was inconsistent with Liberty Mutual's refusal and/or failure to reimburse Black & Decker for expenses incurred with respect to the PAS Fulton claim.

  107. Between February 1998 and January 2003, Liberty Mutual failed to reimburse Black & Decker for any defense or indemnification costs with respect to the Medway, PAS Oswego or PAS Fulton claims. On or about January 30, 2003, while the summary judgment motions with respect to Medway, PAS Oswego and PAS Fulton were pending in the 1996

27

Action, Black & Decker served responses to interrogatories in that action in which it asserted that the conduct of Liberty Mutual in repudiating its agreements to indemnify and defend Black & Decker with respect to the Medway, PAS Fulton and PAS Oswego claims was in violation of Mass. Gen. Laws c. 93A.

108. On March 27, 2003 Black & Decker conducted a Rule 30(b)(6) deposition of Liberty Mutual concerning the conduct of Liberty Mutual in failing to honor its agreements to indemnify and defend Black & Decker in connection with the Medway, PAS Fulton and PAS Oswego claims. On that date, Liberty Mutual paid the then outstanding principal balance with respect to the Medway and PAS Fulton claims and a portion of the then outstanding principal balance with respect to the PAS Oswego claim. The payment did not include any interest, although Black & Decker had incurred the costs beginning in 1985.

109. For more than one year following March 27, 2003, Liberty Mutual had not paid the outstanding balance due with respect to the PAS Oswego site or explained the basis for not paying that balance notwithstanding its assertion on March 27, 2003 that "we are continuing to review the additional requested items [for which payment was not made], and will provide a response at a future date, once our review is completed."

110. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual used the pendency of the 1996 Action as a further pretext to avoid paying obligations that it does not contest. Said obligations include, but are not limited to, honoring its agreement to pay defense costs and indemnification costs for the Medway, PAS Fulton and PAS Oswego claims.

111. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual would not have made payments with respect to the Medway, PAS Fulton and PAS Oswego claims if Black & Decker had not filed the Motion to Supplement and Chapter 93A Motion,

28

asserted in its response to discovery requests that the non-payment of those amounts was in violation of Mass. Gen. Laws c. 93A and noticed the Rule 30(b)(6) deposition of Liberty Mutual.

### COUNT I: VIOLATION OF MASS. GEN. LAWS c. 93A

112. Black & Decker incorporates the allegations contained in paragraphs 1 through 111 of the Complaint, as if set forth in full herein.

113. Black & Decker is informed and believes, and therefore avers, that Liberty Mutual has repeatedly violated its duties under law as an insurer, and has shown reckless disregard to, and conscious indifference of, those duties by:

    a.    failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies;

    b.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    c.    denying and otherwise failing to pay claims without conducting a reasonable investigation based upon all available information;

    d.    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

    e.    failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

    f.    failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

g. failing to handle each claim on an individual basis and failing promptly to pay each claim as to which there was no reasonable dispute as to its obligation to defend and/or to indemnify;

h. failing promptly to settle claims in which its liability was clear, in order to influence settlement of other claims;

i. acting in a manner intended to cause delay in the satisfaction of Black & Decker's claims;

j. acting in a manner inconsistent with good faith;

k. entering into a contract with an intention not to perform certain of its obligations pursuant to the contract;

l. conditioning the settlement of a civil action based upon its failure to meet its obligations to its insureds on requiring other insureds, who were not parties to that civil action, to relinquish rights against Liberty Mutual, including rights with respect to claims as to which there was no colorable basis for Liberty Mutual denying payment;

m. conditioning the settlement of a civil action based upon its failure to meet its obligations to its insureds on the insureds' relinquishment of rights against Liberty Mutual concerning claims that were not the subject of that civil action, including claims where there was no colorable basis for Liberty Mutual denying payment;

n. attempting to coerce its insureds to surrender, or reduce, the insurance coverage Liberty Mutual had contracted to provide;

o. seeking and obtaining from Black & Decker detailed information concerning certain claims under the pretext of evaluation for the purpose of complying with its obligations as an insurer but for the actual purpose of filing a complaint in the 1996 Action and unjustifiably imposing cost and expense on Black & Decker;

p. concealing, by conduct including omissions and misrepresentations, both its intention to file a declaratory judgment action against its insureds and the existence of the action it filed;

q. not acting in accordance with its acknowledged obligation to provide a defense as required by the Policies;

r. unreasonably delaying in paying amounts it had agreed to pay for defense and/or indemnification;

s. engaging in an unlawful and coercive attempt to "buy back" the insurance policies that it issued, with the goal of forcing its insureds to relinquish their rights to insurance coverage;

t. raising multiple, shifting defenses regarding coverage, and continuing to assert defenses having no basis in fact or law, causing great expense to Black & Decker;

u. entering into a course of conduct to avoid the defense of, payment of, or full payment of, meritorious Environmental Claims and/or Long-Term Exposure Claims and/or to delay such payments to the detriment of Black & Decker; and

31

   v.  not making payments to Black & Decker that it had represented to the Court that it had agreed to make.

114. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual constitutes unfair and deceptive acts and practices in trade or commerce in violation of Mass. Gen. Laws c. 93A.

115. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual in violation of Mass. Gen. Laws c. 93A was knowing and willful.

116. Black & Decker has suffered damage as a result of the conduct of Liberty Mutual in violation of Mass. Gen. Laws c. 93A.

### COUNT II: VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA"), C.G.S.A. § 42-110a et seq.

117. Black & Decker incorporates the allegations contained in paragraphs 1 through 116 of the Complaint, as if set forth in full herein.

118. Black & Decker is informed and believes, and therefore avers, that, over a period of years, Liberty Mutual has repeatedly violated its duties under law as an insurer, including, but not limited to, its duties under the Connecticut Unfair Insurance Practices Act ("CUIPA"), C.G.S.A. § 38a-815 et seq. and in particular §38a-816 thereof, by committing the following, and by committing certain of the following with such frequency, in connection with multiple claims of Black & Decker, as to indicate a general business practice:

   a.  failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies;

   b.  failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

32

c. denying and otherwise failing to pay claims without conducting a reasonable investigation based upon all available information;

d. not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

e. failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

f. failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

g. failing to handle each claim on an individual basis and failing promptly to pay each claim as to which there was no reasonable dispute as to its obligation to defend and/or to indemnify;

h. failing promptly to settle claims in which its liability was clear, in order to influence settlement of other claims;

i. acting in a manner intended to cause delay in the satisfaction of Black & Decker's claims;

j. acting in a manner inconsistent with good faith;

k. entering into a contract with an intention not to perform certain of its obligations pursuant to the contract;

l. conditioning the settlement of a civil action based upon its failure to meet its obligations to its insureds on requiring other insureds, who were not

33

parties to that civil action, to relinquish rights against Liberty Mutual, including rights with respect to claims as to which there was no colorable basis for Liberty Mutual denying payment;

m. conditioning the settlement of a civil action based upon its failure to meet its obligations to its insureds on the insureds' relinquishment of rights against Liberty Mutual concerning claims that were not the subject of that civil action, including claims for which there was no colorable basis for Liberty Mutual denying payment;

n. attempting to coerce its insureds to surrender, or reduce, the insurance coverage Liberty Mutual had contracted to provide;

o. seeking and obtaining from Black & Decker detailed information concerning certain claims under the pretext of evaluation for the purpose of complying with its obligations as an insurer but for the actual purpose of filing a complaint in the 1996 Action and unjustifiably imposing cost and expense on Black & Decker;

p. concealing, by conduct including omissions and misrepresentations, both its intention to file a declaratory judgment action against its insureds and the existence of the action it filed;

q. not acting in accordance with its acknowledged obligation to provide a defense as required by the Policies;

r. unreasonably delaying in paying amounts it had agreed to pay for defense and/or indemnification;

s.  engaging in an unlawful and coercive attempt to "buy back" the insurance policies that it issued, with the goal of forcing its insureds to relinquish their rights to insurance coverage;

t.  raising multiple, shifting defenses regarding coverage, and continuing to assert defenses having no basis in fact or law, causing great expense to Black & Decker;

u.  entering into a course of conduct to avoid the defense of, payment of, or full payment of, meritorious Environmental Claims and/or Long-Term Exposure Claims and/or to delay such payments to the detriment of Black & Decker; and

v.  not making payments to Black & Decker that it had represented to the Court that it had agreed to make.

119. Said conduct of Liberty Mutual is tied to a form of trade or commerce intimately associated with Connecticut in that certain of the Policies were issued to the insureds in Connecticut, and the Policies provide Black & Decker coverage, inter alia, of claims concerning remediation of alleged contamination of the environment at sites in Connecticut.

120. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in Connecticut in violation of C.G.S.A. § 42-110a et seq. ("CUTPA") and CUIPA.

121. Black & & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual in violation of CUTPA and CUIPA was outrageous, reckless and wanton, in willful disregard of, or indifference to, the rights of Black & Decker.

122. Black & Decker has suffered an ascertainable loss of money or property as a result of the conduct of Liberty Mutual in violation of CUTPA and CUIPA.

### COUNT III: BREACH OF IMPLIED COVENANTS - THE POLICIES

123. Black & Decker incorporates the allegations contained in paragraphs 1 through 122 of the Complaint, as if set forth in full herein.

124. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual was in breach of implied covenants of the Policies, including the implied covenant of good faith and fair dealing.

125. Black & Decker has suffered damage as a result of the conduct of Liberty Mutual in breach of implied covenants of the Policies.

### COUNT IV: BREACH OF IMPLIED COVENANTS - 1995 AGREEMENT

126. Black & Decker incorporates the allegations contained in paragraphs 1 through 125 of the Complaint, as if set forth in full herein.

127. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual was in breach of implied covenants of the 1995 Agreement, including the implied covenant of good faith and fair dealing.

128. Black & Decker has suffered damage as a result of the conduct of Liberty Mutual in breach of implied covenants of the 1995 Agreement.

### COUNT V: BREACH OF EXPRESS COVENANTS - 1995 AGREEMENT

129. Black & Decker incorporates the allegations contained in paragraphs 1 through 128 of the Complaint, as if set forth in full herein.

130. Black & Decker is informed and believes, and therefore avers, that the conduct of Liberty Mutual was in breach of express covenants of the 1995 Agreement.

131. Black & Decker has suffered damage as a result of the conduct of Liberty Mutual in breach of express covenants of the 1995 Agreement with Black & Decker.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiffs, The Black & Decker Corporation, Black & Decker Inc., Black & Decker (U.S.) Inc., Emhart Corporation and Emhart Industries, Inc., pray that this Court:

1. award them such damages as they have suffered due to the conduct of defendant, Liberty Mutual Insurance Company, plus interest, costs and attorney's fees;

2. award them treble damages as a result of the knowing and willful violations of Mass. Gen. Laws c. 93A;

3. award them punitive damages as a result of the wanton and reckless disregard of their rights in violation of C.G.S.A. §42-110a et seq.; and

4. award them such other and further relief as is just and proper.

## JURY CLAIM

Plaintiffs claim a trial by jury of all issues in their Complaint.

By their attorneys,

*Jack R. Pirozzolo*
Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO#043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470