UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE BLACK & DECKER CORPORATION, BLACK & DECKER, INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART, INC.,<br><br>      Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>      Defendant. | CIVIL ACTION<br>No. 1:04-CV-10848-DPW |

## MEMORANDUM OF LAW OF LIBERTY MUTUAL INSURANCE COMPANY IN SUPPORT OF THE MOTION TO DISMISS AND/OR MOTION FOR MORE DEFINITE STATEMENT

The defendant, Liberty Mutual Insurance Company ("Liberty Mutual") files this Memorandum of Law in Support of its Motion to Dismiss the Complaint of plaintiffs, The Black & Decker Corporation, Black & Decker, Inc., Black & Decker (U.S.) Inc., Emhart Corporation, and Emhart Industries, Inc. (collectively, "Black & Decker").

## PRELIMINARY STATEMENT

The parties have been involved in protracted litigation arising out of certain policies of insurance issued by Liberty Mutual to Black & Decker. The focus of the litigation, essentially, is whether or not Liberty Mutual policies of insurance provided coverage to Black & Decker for certain claims asserted against Black & Decker. Recently, in the main action, the Court entered an Order/Status Report (hereinafter "Order") requiring the filing of new pleadings. Black & Decker's

Complaint is the result of the Court's Order requiring that a separate case be opened in relation to Black & Decker's claim that Liberty Mutual allegedly violated Chapter 93A and that Liberty Mutual allegedly acted in bad faith with respect to coverage issues.

The Complaint, however, is defective and fails to state a cause of action as a matter of law. A cursory review of the Complaint reveals that Black & Decker ignored the Court's Order regarding the manner in which the Complaint should be pled. Indeed, despite express instructions, Black & Decker failed entirely to plead specific allegations, including theories of relief, for each of the environmental claims that form the basis for the alleged Chapter 93A violations and breach of the covenant of good faith committed by Liberty Mutual. Instead, the Complaint lacks specific allegations regarding the individual site claims at issue. Black & Decker's decision to ignore the Court's instructions as to the pleading requirement, renders the Complaint defective as a matter of law.

Next, Black & Decker, for the first time, alleges a claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") despite the fact that the claim is barred by a three year statute of limitations. Having never alleged a violation of CUTPA in any prior pleading, Black & Decker attempts to raise for the first time a potential cause of action against Liberty Mutual with regard to claims predicated on policies of insurance issued to Black & Decker in Connecticut. However, it is clear from the Complaint that Black & Decker's alleged cause of action under CUTPA would have arisen prior to April 26, 2001 - three years before the filing of the Complaint. It cannot be disputed that Black & Decker was well aware of any of its

potential claims by 1996 when it filed its original counterclaims. Accordingly, Liberty Mutual's alleged violation under CUTPA fails as a matter of law since the Complaint was filed and served well after the statute of limitations had run.

Finally, as expressly acknowledged by Black & Decker in the Complaint, the Court's instructions to Black & Decker, relating to the filing of a new Complaint, pertained solely to a claim under M.G.L. Ch. 93A, and never provided Black & Decker with the right to plead any other causes of action. The filing of the CUTPA claim was neither contemplated nor authorized by the Court and, therefore, there can be no relation back to any prior filing for purposes of the statute of limitations.

For these reasons, and based upon the arguments set forth in detail below, the Court should dismiss Black & Decker's Complaint. Alternatively, the Court should require Black & Decker to allege further and more specific facts as to the claims asserted under Chapter 93A and the alleged breaches of the covenant of good faith so that Liberty Mutual is given sufficient notice regarding the claims it is defending.

### THE PLAINTIFFS' ALLEGATIONS AND FACTS

**A.    Procedural History**

The Complaint in this action is preceded by a case already pending in the District Court entitled *Liberty Mutual Insurance Company v. The Black & Decker Corp., et als.*, Civil Action No. 96-10804-DPW (the "Original Action"). Liberty Mutual filed the Complaint in the Original Action in 1996 seeking a declaratory judgment with regard to environmental claims raised by Black & Decker for coverage under policies of insurance issued by Liberty Mutual. On April 26, 1996,

in response to Liberty Mutual's Complaint, Black & Decker served its Answer and asserted a Counterclaim regarding Liberty Mutual's alleged failure to defend and indemnify Black & Decker in relation to the claims asserted. On or about September 11, 2002, Black & Decker moved to supplement its Counterclaim.[1] The Supplemental Counterclaim includes additional allegations relating to Liberty Mutual's alleged failure to defend and indemnify Black & Decker.

On or about April 8, 2004, the Court entered an Order in the Original Action requiring that Black & Decker file a separate complaint in relation to the allegations of its Counterclaim that the conduct of Liberty Mutual allegedly was in violation of Mass. Gen. Laws c. 93A and allegedly in breach of its obligations of good faith.

The Complaint was filed on April 23, 2004 and contains five causes of action: (1) violation of Mass. Gen. Laws c.93A; (2) violation of CUTPA (C.G.S.A. Sec. 42-110a et seq.); (3) breach of implied covenants relating to policies of insurance; (4) breach of implied covenant relating to the 1995 agreement; and (5) breach of express covenant relating to the 1995 agreement.[2]

---

[1] To promote efficiency and judicial economy, Liberty Mutual does not attach a copy of Black & Decker's Counterclaim or Amended Counterclaim, that are referenced in this Memorandum of Law, since the pleadings are on file with the Court. Should the Court prefer copies of the pleadings to be submitted herein, Liberty Mutual will supplement the record.

[2] Previously, Black & Decker alleged claims for Breach of Contract – Environmental Claims (Count I); Declaratory Judgment – Environmental Claims (Count II); Breach of Contract – Long Term Exposure Claims (Count III); Declaratory Judgment – Long Term Exposure Claims (Count IV); Violation of Mass Gen. Laws c. 93(a) (Count V); and Breach of Express and Implied Covenants (Count VI) in the Counterclaim; and Further Breach of Contract – Long Term Exposure (Count VII); Further Declaratory Judgment – Long Term Exposure (Count VIII); Further Violations of Mass Gen. Laws c. 93(a) (Count IX); and Further Violations of Breach of Express and Implied Covenants (Count X) in the Amended Counterclaim.

**B.    Statement of Facts**

In general, the Complaint alleges a series of violations under c.176D in connection with environmental and long term exposure claims submitted by Black & Decker for coverage under numerous policies of insurance allegedly issued by Liberty Mutual. The claims, at issue, are identified in the Complaint as the "Environmental Claims" and "Long-Term Exposure Claims." *See* ¶¶ 29-39, Complaint. However, the Complaint fails to provide clear notice of Liberty Mutual's allegedly wrongful actions with regard to the specific claims and sites.

At the April 8, 2004 hearing, when the Court required Black & Decker to file a separate Complaint for 93A and good faith claims, Black & Decker did not advise the Court that it intended to file an unfair trade practices claim under Connecticut statute. *See* Hearing Transcript dated April 8, 2004. Indeed, the exchange between the Court and Black & Decker relating to the filing of the new Complaint consistently discussed only the filing of a separate Complaint for 93A claims. *See* Hearing Transcript dated April 8, 2004, p. 2:9-17 ("First, with respect to the 93A good faith claims, I think my view is that a separate complaint should be filed . . . . "); p. 8:18-20 (Q. On the 23rd, you'll file your 93A complaint; A. Yes. Thank you.); p. 10:1-5 ("Then you will answer both in the original case and the 93A case on May 7th"); *see also* pp. 6:16 to 7:22. At no time did Black & Decker mention a claim under CUTPA. In fact, at the April 28, 2004 hearing, Black & Decker's counsel acknowledged that the new Complaint would involve only "a simple 93A claim." *See* Hearing Transcript dated April 18, 2004, p. 3:12-15.

The Court, in its April 8, 2004 Order, also required Black & Decker to plead specific allegations as to each site at issue in relation to its 93A claim. *See* Hearing Transcript dated April 8, 2004, pp. 3:17-19 ("Now let's just talk about that 93A claim a little bit because I don't want it necessarily to be altogether sprawling."). Indeed, Black & Decker was ordered to allege specific facts relating to the sites at issue and the theories of relief for each individual site in order to state a claim against Liberty Mutual under Chapter 93A. *See* Hearing Transcript dated April 8, 2004, pp. 6:18 to 7:7 ("But I think what you have to do in your 93A case is identify those sites for which you did not receive payment that you claim establish a 93A dispute so that your going to have to particularize that . . . but the 93A claim case that you're going to bring is going to say - - substantively identify we were entitled to payment, prompt payment at these following sites.  And I suspect that they will be the sites that are in dispute, every one of the sites that are in dispute. . . but that's the way I'd like to have that done, so that they at least have notice of what it is your are saying.")  p. 7:17-20 ("But they are entitled to have notice that whatever your course of dealing theory is that you say you were short-cheated [sic] at Huth and that that gives rise to double or treble damages...").

The vague and conclusory allegations contained in the Complaint reveal Black & Decker's failure to comply with the Court's express instructions.  For example, at paragraphs 42 and 43 of the Complaint, while Black & Decker lists the multiple sites comprising the "Superfund Claims" and "Old Industrial Sites" as environmental claims Liberty Mutual improperly denied, (*See* ¶¶ 42, 43, Complaint), Black & Decker fails to reveal how or why  Liberty Mutual improperly

- 6 -

denied coverage for those sites.  Then, at paragraph 44 of the Complaint, Black &

Decker states that Liberty Mutual failed to respond to "some  or all of the

[Superfund Claims and Old Industrial Site Claims]."  *See* ¶ 44, Complaint.  But,

Black & Decker never asserts when and in what manner it provided notice of those

claims to Liberty Mutual.  Further, consistent with its determination to provide

vague notice to Liberty Mutual of the allegations giving rise to its alleged claims,

Black & Decker never identifies what specific sites Liberty Mutual failed to respond

to in relation to the "Superfund Claims" and "Old Industrial Site Claims."

Similarly, at paragraphs 59 through 60 of the Complaint, Black & Decker identifies

the "Unresolved Claims" as further claims inappropriately denied by Liberty

Mutual.  *See* ¶¶ 59-60, Complaint.  However, Black & Decker never identifies how

or in what manner Liberty Mutual "adopted an unlawful scheme to avoid its lawful

obligations" with respect to the specific sites making up the "Unresolved Claims."[3]

## ARGUMENT

Fed. R. Civ. P. 12(b)(6) authorizes this Court to dismiss any cause of action

for failure of the pleading "to state a claim upon which relief can be granted."

Dismissal of a claim is required where a plaintiff cannot succeed upon any

reasonable view of the facts stated.

---

[3] Other examples of the conclusory allegations contained in the Complaint include:  (1) "Liberty
Mutual … created the Declaratory Judgment Department and took *other steps* …" (¶ 37, Complaint)
(emphasis supplied); (2) "Liberty Mutual received a number of Environmental Claims … it either
denied coverage for, or failed to advise … its coverage position." (¶ 42, Complaint); (3) "Liberty
Mutual received a number of Environmental Claims … regarding … "old Industrial Sites" … it either
denied coverage for, or failed to advise … its coverage position."  (¶ 44, Complaint); (4) "Liberty
Mutual asserted that it had no duty to indemnify or defend with respect to *certain claims* …
including the Medway and PAS Oswego claims."  (¶ 79, Complaint) (emphasis supplied); and (5)
"Liberty Mutual asserted that it had no duty to indemnify or defend with respect to *certain claims* …
including the Medway and PAS Oswego claims."  (¶ 80, Complaint) (emphasis supplied).

Although well-pled facts must be taken as true, plaintiffs' conclusory allegations – crafted only to avoid a motion to dismiss – must be disregarded by the Court. *See Campagna*, 334 F.3d at 155 (stating that in considering whether the requirements of Fed. R. Civ. P. 12(b)(6) have been met, courts are not required to credit "bald assertions, unsupportable conclusions, and opprobrious epithets") (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.3d 13, 16 (1st Cir. 1989)) (internal citation omitted)); *see also Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48-49 (1st Cir. 1993) ("[f]actual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions . . . or to 'bald assertions' . . . and 'one conclusory sentence'" was insufficient to avoid dismissal where nothing remotely suggests the factual basis for this claim).

Although courts generally will construe pleadings liberally, at a minimum, the complaint must allege the material elements of a cause of action. *See Camagna*, 334 F.3d at 155 ("a plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory'" (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.3d 13, 16 (1st Cir. 1989)) (internal citation omitted)); *Podiatrist*, 332 F.3d at 19 (holding that the complaint must set forth either direct or inferential factual allegations for each material element necessary to sustain recovery under an actionable legal theory) (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement where the pleading is vague or ambiguous. *See Fed. R. Civ.*

P. 12(e); *see also American Mgmt. and Admin. Corp. v. Solid Rock Wall Systm.*, 186

F. Supp. 2d 69, 76 (D. Puerto Rico 2002).  Similarly, Federal Rule of Civil Procedure

8(a) requires that the complaint "give the defendant fair notice of what the

plaintiff's claim is and the grounds up on which it rests."  *See DeSalle v. Key Bank of*

*S. Maine*, 685 F. Supp. 282, 283 (D. Me. 1988) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  The Court has broad discretion in determining whether to grant a

motion for more definite statement, which will only be disturbed if abuse of

discretion is found.  *See e.g. Tarabolski v. Town of Sharon*, 70 F.3d 110, 110 (1st Cir.

1995).  Although a plaintiff need not provide highly detailed allegations, a

generalized statement of facts is inadequate if the defendant is not on sufficient

notice as to the claims asserted.  *See e.g. Raytheon Co. v. Continental Casualty Co.*,

123 F. Supp. 22, 32 (D. Mass. 2000) (citing *Langadinos v. American Airlines, Inc.*,

199 F.3d 68, 72-73 (1st Cir. 2000)).

 As described in detail below, Black & Decker's Complaint should be

dismissed for failure to state a cause of action against Liberty Mutual and because

the new claim under the Connecticut statute is time barred.  In the alternative,

Liberty Mutual moves that the Complaint be amended to include further

allegations so as to give Liberty Mutual sufficient notice of the claims it is required

to defend.

## I. BLACK & DECKER HAD NO AUTHORITY TO BRING ITS CONNECTICUT UNFAIR TRADE PRACTICES ACT CLAIM

 It is undisputed that the Court never provided Black & Decker with the right

to assert any new claims against Liberty Mutual at this time in the proceeding.  *See*

Hearing Transcript dated April 8, 2004 and cites referenced *infra*. Indeed, Black &

Decker acknowledges as such in the Complaint when it states that that the Court's

Orders required that the Black & Decker Counterclaim, "alleging that the conduct

of Liberty Mutual was in violation of Mass. Gen. Laws. c. 93A and in breach of its

obligation of good faith, originally filed in Civil Action No. 96-10804 DPW, be filed

in a new action that relates back to Civil Action No. 96-10804-DPW." *See* p. 1

(Preliminary Statement), Complaint.

     Accordingly, because Black & Decker ignored the Court's express instructions

to plead only Chapter 93A and breach of good faith claims, Count II which alleges a

new cause of action under CUTPA, should be dismissed as a matter of law.

## II.    THE THREE-YEAR STATUTE OF LIMITATIONS HAS RUN ON BLACK & DECKER'S CLAIM FOR VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

     The Connecticut Unfair Trade Practices Act prohibits any action being

brought "more than three years after the occurrence of a violation." C.G.S.A. 42-

1000g(f).[4] This clear and unequivocal language "precludes any construction thereof

delaying the start of the limitations period until the cause of action has accrued or

the injury has occurred." *See Fichera v. Mine Hill Corp.*, 541 A.2d 472, 473 (Conn.

1988); *see also Kellog v. Key Bank of Maine*, 166 B.R. 504, 508 (D. Conn. 1994) (the

three year statute of limitations begins after the occurrence of the violation not

---

[4] As part of its allegations in the CUTPA claim, under C.G.S.A. §42-110a et seq., Black & Decker alleges that Liberty Mutual violated the Connecticut Unfair Insurance Practices Act ("CUIPA") under C.G.S.A. §38a-815. The analysis of a violation under CUIPA for statute of limitations purposes is the same as a violation under CUTPA. *See Colman v. CNA Insurance Co.*, 1994 WL 530157 *1, * 3 (Conn. Super. Ct. 1994) (citing *Lees v. Middlesex Ins. Co.*, 594 A.2d 952, 955 (Conn. 1991)) (CUIPA is silent as to the statute of limitations, but in a CUTPA claim based on CUIPA violations, the CUTPA statute of limitations applies).

after discovery of the violation); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F. Supp. 276, 287 (S.D.N.Y. 1991) (the cause of action under CUTPA accrued more than three years before the filing of the complaint and, therefore, was barred by the statute of limitations); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 714 (D. Conn. 2003) (the statute of limitations commences the moment the act or omission complained of occurs). Thus, the critical date for statute of limitations purposes is in date of the occurrence of the violation, not the date it was discovered. *See id.*

Black & Decker's Complaint was filed on April 16, 2004. Accordingly, in order to avoid the statute of limitations, Black & Decker's alleged CUTPA injury must have occurred on or after April 16, 2001. However, there are no allegations in the Complaint that establish such a time frame. To the contrary, the Complaint consistently references acts and events occurring prior to April 16, 2001. *See e.g.* Complaint,

- p. 8 ("Beginning in or about 1970, Liberty Mutual decided to change its comprehensive general liability insurance policies . . . ")

- p. 10 ("The unlawful Liberty Mutual conduct regarding Black & Decker prior to January 1, 1995")

- p. 11 ("[D]uring the pendency of the 1990 Coverage Action, Liberty Mutual embarked on a policy to unlawfully avoid its obligations in connection with the Environmental Claims that were not at issue in the 1990 Coverage Action.")

- 11 -

- p. 11 ("During the pendency of the 1990 Coverage Action, Liberty Mutual advised Black & Decker it would no longer honor its agreement to pay a portion of . . . defense costs . . ")

- pp. 11-12 ("Prior to commencement of the 1990 Coverage Action, Liberty Mutual agreed to pay Black & Decker's defense and indemnification costs . . . ")

- p. 13 ("In or about August 1991, Black & Decker provided Liberty Mutual notice of a Long Term Exposure Claim)

- p. 15 ("Liberty Mutual entered into an agreement . .. dated January 23, 1995 . . . at [which] time . . . Liberty Mutual had failed to provide coverage . . . with respect to numerous claims submitted by Black & Decker . . . ")

- p. 16 ("prior to entering into the 1995 Agreement, Liberty Mutual adopted an unlawful scheme to avoid its obligations as an insurer . . .")

- p. 67 ("Liberty Mutual sent Black & Decker a letter dated January 26, 1995 . . . . [which] was an attempt by Liberty Mutual to impose an unreasonable task upon Black & Decker . . . ")

- p. 19 ("On January 2, 1996, after having used the Forbearance Provision to prevent Black & Decker from making lawful claims . . . Liberty Mutual . . . Commenced a declaratory judgment action . . . ")

- p. 23 ("In December 1996 and February 1997, Black & Decker provided Liberty Mutual notice of the Alwell Asbestos Long-Term Exposure Claim").

All of these allegations demonstrate that the alleged bases for this claim occurred well before April 16, 2001, the trigger date for statute of limitations purposes. In any event, Black & Decker filed its counterclaim more than eight (8) years ago without reference whatsoever to a statutory violation of CUTPA.

Accordingly, because a violation under CUTPA must be brought within three years of its occurrence and because there is no reasonable dispute that the events giving rise to Black & Decker's claim for CUTPA against Liberty Mutual allegedly occurred prior to April 16, 2001, the claim in Count II is barred by the statute of limitations and must be dismissed.[5]

## III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE BLACK & DECKER FAILED TO COMPLY WITH THE COURT'S APRIL 8, 2004 ORDER AND PROVIDE SUFFICIENT NOTICE TO LIBERTY MUTUAL.

Despite express instructions from the Court regarding the requirements for filing a 93A Complaint, Black & Decker chose to file a pleading that failed to fulfill the Court's requirements and provide Liberty Mutual with requisite notice of the specifics of the claims raised in the Complaint.

On April 8, 2004, after hearing argument from all parties on the status report and motion for clarification, the Court ordered Black & Decker to file a separate complaint with respect to the 93A claims against Liberty Mutual. *See* Hearing Transcript dated April 8, 2004, pp. 2:9-15. Pursuant to the April 8, 2004 Order and accompanying instructions at the hearing, Black & Decker was required to plead

---

[5] Clearly, Black & Decker's CUTPA claim cannot relate back to its Counterclaim and Amended Counterclaim under this Court's Order, or otherwise and, therefore, is barred by the statute of limitations. Black & Decker never pled previously any alleged violations of CUTPA, and, therefore, the claim cannot relate back.

specific allegations relating to each site at issue that form the basis for its 93A claim against Liberty Mutual. *See* Hearing Transcript dated April 8, 2004, p. 3:17-19 ("Now let's just talk about that 93A claim a little bit because I don't want it necessarily to be altogether sprawling."). Indeed, the Court ordered Black & Decker to allege specific facts relating to the individual sites at issue and the theories of relief for each individual site. *See* Hearing Transcript dated April 8, 2004, pp. 6:18 to 7:7 ("But I think what you have to do in your 93A case is identify those sites for which you did not receive payment that you claim establish a 93A dispute so that you going to have to particularize that . . . but the 93A claim case that you're going to bring is going to say - - substantively identify we were entitled to payment, prompt payment at these following sites. And I suspect that they will be the sites that are in dispute, every one of the sites that are in dispute . . .); p. 7:17-20 ("But they are entitled to have notice that whatever your course of dealing theory is that you say you were short-cheated at Huth and that that gives rise to double or treble damages - - "). The Court was particularly concerned with providing Liberty Mutual specific notice of what claims, allegations, and theories it would have to defend against in relation to the 93A claim. *See* Hearing Transcript, p. 7:2-7 ("But that's the way that I'd like to have that done, so that they at least have notice of what it is you are saying.").

However, in disregard of the Court's instructions, Black & Decker did not allege any facts specific to each individual site that could form a basis for a violation under Chapter 93A. Instead, Black & Decker's Complaint contains only generalized assertions relating to the alleged improper conduct of Liberty Mutual. With this

level of ambiguity, it is not surprising that there are no allegations that identify, with any specificity, how or in what manner Liberty Mutual violated Chapter 93A as to each individual site.

On the rare occasion that Black & Decker specifically identifies an individual site, there are no allegations regarding what facts for that site form a cause of action for violation of Chapter 93A against Liberty Mutual. For example, at page 11 of the Complaint, Black & Decker defines the "Superfund Claims" (which are a larger part of the "Environmental Claims") to include the Shaffer Landfill and Simpsonville Hazardous Waste Site. *See* ¶ 11, Complaint. Despite specifically identifying these sites, Black & Decker never alleges any facts relating to Shaffer or Simpsonville which identify how or in what manner Liberty Mutual violated Chapter 93A in relation to the claims for these sites. Further, Black & Decker never provides any specific allegations as to the time it submitted these claims to Liberty Mutual or Liberty Mutual's response or lack of response to the same. For example, in paragraph 42, Black & Decker states that "[d]uring the pendency of that action, Liberty Mutual received a number of Environmental Claims from Black & Decker regarding matters that were not at issue in the 1990 Coverage Action." *See* ¶ 42, Complaint. However, Black & Decker never alleges the date it submitted these claims to Liberty Mutual. Similarly, at paragraph 44, Black & Decker alleges that Liberty Mutual either "failed to respond to some or all" of the claims and that when "it did respond to those claims, it purported to deny coverage." *See* ¶ 44, Complaint. However, Black & Decker never alleges when these events happened. Instead, Black & Decker generally states that Liberty Mutual simply failed to act

- 15 -

without conducting "a reasonable investigation" and/or that it failed "to respond to some or all" of the "Superfund Claims" without ever discussing Shaffer or Simpsonville specifically. *See* ¶¶ 42-44, Complaint. Accordingly, Liberty Mutual is left to guess as to whether Black & Decker alleges that it failed to investigate and/or respond to Shaffer and Simpsonville.[6]

As further evidence of Black & Decker's refusal to provide any specific facts regarding the bases for its claims, there are no allegations that identify where the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred in relation to the Chapter 93A claim. This omission is not a mere technical pleading failure by Black & Decker. Instead, a Chapter 93A claim fails to state a cause of action unless the "alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth." M.G.L.A. Ch. 93A, §11; *see also*; *Clinton Hosp. Ass'n v. Corson Group, Inc.*, 907 F.2d 1260, 1265-1266 (1st Cir. 1990); *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998).

Without further allegations, as required in the Court's April 8, 2004 Order, Liberty Mutual has no way of determining whether the acts that form the basis for the Chapter 93A claim occurred primarily and substantially in Massachusetts. Essentially, Liberty Mutual is deprived of asserting a motion to dismiss on this very

---

[6] A similar analysis can be made with respect to the individual sites making up the "Old Industrial Sites" and "Unresolved Claims." *See* ¶¶ 43-44, 58-60, Complaint. For example, Huth Oil and Harmonic Drive are sites alleged to be part of the "Unresolved Claims." *See* ¶ 60, Complaint. Black & Decker alleges that Liberty Mutual engaged in an "unlawful scheme to avoid its legal obligations as an insurer with respect to the Unresolved Claims," but never specifies how Liberty Mutual did so regarding Huth Oil and Harmonic Drive. *See* ¶ 60, Complaint. Further examples of the vague and conclusory allegations contained in the Complaint are set forth at pages 8-9 of this Memorandum.

basis since it cannot state, from the Complaint, whether the acts and omissions forming the Chapter 93A claim took place in Massachusetts, Connecticut, or any other state.  Thus, Black & Decker's refusal to identify Liberty Mutual's alleged violative conduct with respect to specific sites, requires the dismissal of the Complaint for failure to state the essential elements of its claim.

Under these circumstances, Black & Decker's actions amount to a refusal to comply with a Court's Order for a more definite statement since the Court, in preemptive fashion via the April 8, 2004 Order, already advised Black & Decker to plead specific allegations relating to each site when filing the 93A Complaint against Liberty Mutual.  Accordingly, the same logic of dismissing an offending pleading *with prejudice* when the plaintiff refuses to comply with a Court's Order for a more definite statement should be applied to Black & Decker's Complaint.  *See e.g. Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 571 (D. RI 1996) (if a party refuses to comply with a Court's Order for more definite statement, the offending pleading may be stricken); *see also Tarabolski*, 70 F.3d at 100 (Court within its discretion in dismissing plaintiff's claim with prejudice after plaintiff failed to file a more definite statement); *Pappas v. Baines*, 981 F.2d 1245, 1245 (1st Cir. 1992) (unpublished decision) (the Court has broad discretion to dismiss for failure to file a more definite statement even if the plaintiff was only given one opportunity to amend).

**IV.    BLACK & DECKER MUST SUPPLEMENT ITS VAGUE AND CONCLUSORY   ASSERTIONS WITH MORE SPECIFIC ALLEGATIONS THAT PUT LIBERTY MUTUAL ON NOTICE AS TO THE CLAIMS IT IS DEFENDING.**

If any of Black & Decker's claims in the Complaint remain, Black & Decker should be required to file a more definite statement to shore up the vague and conclusory allegations contained therein.[7] *See* Fed. R. Civ. P. 12(e) and 8(a); *see also Tarabolski*, 70 F.3d at 110 (court has broad discretion to require specific allegations in the form of a more definite statement).

As set forth throughout this Memorandum and specifically at pages 6-7, 13-15 *infra.*, Black & Decker failed to comply with this Court's instructions requiring it to allege specific facts relating to what sites and what theories of relief for each site form the basis for its Chapter 93A and breach of the covenant of good faith claims. *See* Hearing Transcript dated April 8, 2004 pp. 2:9-17; 8:18-20; 6:16 to 7:22.

If the Complaint is allowed to proceed in its current form, Liberty Mutual will be severely prejudiced since it will be required to venture mere guesses at exactly what Black & Decker is alleging as its basis for its Chapter 93A and breach of good faith claims. Accordingly, the Court should require Black & Decker to file a more definite statement addressing the deficiencies discussed herein. *See Podiatrist Ass'n Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) (quoting *Dartmouth Rev. v. Dartmouth College*, 889 F.3d 13, 16 (1st Cir. 1989) (internal citation and quotation marks omitted) (federal courts have warned that the standard on a motion to dismiss is not "entirely a toothless tiger . . . . The

---

[7] For example, it is not clear whether any of the allegations regarding inappropriate claims handling asserted in the previous counterclaims continue to be issues in this new litigation.

threshold for stating a claim may be low, but it is real."); *see also Campagna v.*

*Massachusetts Dep't of Envt'l. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003).

## CONCLUSION

Based upon the foregoing arguments, the Complaint, on its face, fails to state any legally cognizable action against Liberty Mutual and, therefore, must be dismissed in whole, or separate counts must be dismissed for failure to state a cause of action. Alternatively, in addition to the dismissal of certain counts, including the CUTPA count based on the statute of limitations, the Court should enter an order requiring Black & Decker to provide specific allegations sufficient to give notice of the remaining claims Liberty Mutual is required to defend.

**LIBERTY MUTUAL
INSURANCE COMPANY**

By its attorneys,

Ralph T. Lepore, III (BBO #294420)
Deborah E. Barnard (BBO#550654)
Brett D. Carroll  (BBO #640569)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

Dated:  May 20, 2004

# 1914309_v1

*I hereby certify under the pains and penalties of perjury that this document was served upon counsel for all parties in this case on 5/20/04 by hand/by mail.*